**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 01-60068
_____

ALVIN C. COPELAND,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE

Respondent-Appellee,

_____

No. 01-60069
_____

PATTY K. COPELAND, also known as Patty K. White,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE

Respondent-Appellee,

_____

Appeals from the Decision
of the United States Tax Court

_____

May 13, 2002

Before JONES, WIENER, and PARKER, Circuit Judges.

WIENER, Circuit Judge:

Petitioners-Appellants Alvin C. Copeland and Patty K. Copeland, also known as Patty K. White (collectively, "Taxpayers") appeal the Tax Court's grant of partial summary judgment to the Commissioner of Internal Revenue ("Commissioner") and the Tax Court's denial of their motion for summary judgment. We conclude that the Tax Court properly denied the Taxpayers' deduction under 26 U.S.C. § 165 ("I.R.C. § 165") for their initial investments in

the partnerships, and therefore affirm that ruling. The Tax Court erred, however, in sustaining the Commissioner's imposition of the increased interest rate under 26 U.S.C.§ 6621(c) ("I.R.C. § 6621(c)"). Because no deduction was disallowed under 26 U.S.C. § 183 ("I.R.C. § 183"), and because the Commissioner proffered no alternative basis for imposing the I.R.C. § 6621(c) interest rate, the Commissioner may not impose that rate. Accordingly, we reverse the Tax Court's ruling on the I.R.C. § 6621(c) interest rate, and remand for imposition of a judgment consistent with these rulings

## I. Facts and Proceedings

The disputed tax items and interest charges derive from the following transactions: In 1979, Taxpayers invested $100,000 in Garfield Oil and Gas Associates ("Garfield"), a state-law partnership, and in 1981 they invested $75,000 in Capricorn Company ("Capricorn"), also a state-law partnership. Capricorn invested in another state-law partnership, Cardinal Oil Technology Partners ("Cardinal"), after which Garfield and Cardinal together invested in enhanced oil recovery technology projects. From 1979 to 1982, Garfield and Cardinal reported partnership tax items relating to the investments in the enhanced oil recovery technology projects, and allocated the tax items to the partners, including Taxpayers. Taxpayers filed joint tax returns for the tax years 1979 through 1982, which returns included deductions allocated to the Taxpayers from the Garfield and Capricorn partnerships.

In 1990, the Commissioner issued notices of deficiency to

2

Taxpayers, based on the Commissioner's disallowance of the partnership deductions on Taxpayers' returns. The notice of deficiency also imposed interest at 120% of the usual rate on the Taxpayers' underpayment of tax attributable to the disallowed deductions, employing the Secretary's temporary regulations[1] issued pursuant to the then-applicable version of I.R.C. § 6621(c). Taxpayers petitioned the Tax Court for a redetermination of the deficiency that year, but, aside from two flurries of activity in which the parties entered their pleadings, stipulated issues, and made appearances in the Tax Court, there was no further action taken in the Tax Court until 1999.

In the interim, the Tax Court decided Krause v. Commissioner of Internal Revenue,[2] a case involving various enhanced oil recovery technology partnerships which had engaged in activities and transactions substantially identical to those in which Garfield and Cardinal were involved.[3] Following the Tax Court's decision in Krause, Taxpayers paid the principal amount of the tax deficiency, but were allegedly unable to afford to pay the interest that had

---

[1] Temporary Treasury Reg. § 301.6621-2T.

[2] 99 T.C. 132 (1992), aff'd sub nom. Hildebrand v. Commissioner of Internal Revenue, 28 F.3d 1024 (10th Cir. 1994), cert. denied, 513 U.S. 1079 (1995).

[3] As the Commissioner explains, the Garfield and Cardinal limited partnerships were members of a group of limited partnerships known as the "Elektra/Hemisphere" partnerships. The activities and transactions of Garfield and Cardinal were substantially identical to those of the Elektra/Hemisphere partnerships that were the subject of Krause.

3

accumulated by that time. When the Tax Court activities in this case resumed in 1999, the court issued an order requiring the parties to show cause "why a decision in this case should not be entered in accordance with the Court's disposition of the issues in [Krause]." That issue was not actually addressed at the show-cause hearing, however. Instead, when the Tax Court learned that Taxpayers were willing to settle the case by paying the standard interest (not the I.R.C. § 6621(c) increased interest) on the deficiency in a lump-sum payment, the court adjourned the hearing with instructions to the Taxpayers to make the settlement offer within 12 days, and to the Commissioner to file a status report with the court regarding settlement discussions within 30 days. The Tax Court further instructed that (1) if the parties should fail to reach a settlement, they should file a stipulation of facts; (2) the Commissioner should file a motion for summary judgment within 60 days after the status report was due; and (3) Taxpayers should file a response to the Commissioner's motion within one month thereafter.

The parties did not reach a settlement agreement. In accordance with the Tax Court's instructions, they filed a stipulation of facts, which included an affirmation that the factual findings and legal conclusions made in Krause were incorporated by reference, "except for the conclusion that I.R.C. § 6621(c) applies and [except for] any implication that the [Krause] partnerships are partnerships for federal income tax

4

purposes, notwithstanding that they lack profit objective within the meaning of I.R.C. § 183." In particular, the parties agreed that the Krause decision "control[led] the tax treatment of the Partnership Tax Items, as well as the additions to tax asserted in these cases."

The Commissioner then filed a motion for partial[4] summary judgment, arguing that the increased rate of interest under I.R.C. § 6621(c) was properly applied to Taxpayers' underpayment of tax, and that Taxpayers were not entitled to deductions under I.R.C. § 165 for their initial cash investments in the Garfield and Cardinal partnerships. Taxpayers filed their own motion for partial summary judgment, directly opposing both of the Commissioner's contentions.

In a Memorandum Opinion,[5] the Tax Court granted the Commissioner's motion and denied Taxpayers' counter-motion, sustaining the imposition of the I.R.C. § 6621(c) interest rate on Taxpayers' underpayment of tax, and disallowing the I.R.C. § 165 deduction for their initial cash investments in the partnerships. The court entered a Decision reflecting this ruling in October

---

[4] In the Stipulation of Facts submitted by the parties jointly, they agreed that "[a]fter resolution of the I.R.C. §§ 6621 (c) and 165 issues, the only disputed issues will be (A) the petitioner Patty K. Copeland's entitlement to innocent spouse relief, (B) the reclassification of interest on petitioner Alvin C. Copeland's 1985 returns and the effect, if any, of such reclassification on the Joint Returns, and (C) the determination and allocation of certain carrybacks to the Joint Returns between petitioners for purposes of determining the amount of their respective deficiencies."

[5] Copeland v. Commissioner, 79 T.C.M. (CCH) 2127 (2000).

5

2000, from which Taxpayers timely appealed.

## II. Discussion

### A. Standard of Review

"The Tax Court's determinations of law — for example, interpretations of statutory language — are reviewed de novo, while its factual findings are reviewed for clear error."[6]

### B. Analysis

#### 1. I.R.C. § 165 Deduction for Initial Investment

As the Tax Court observed in its Memorandum Opinion, after the Krause case was decided, Taxpayers "concede[d] all of the originally claimed tax benefits relating to their investments in the partnerships, and...[sought] a loss deduction only for the amount of cash they invested in the partnerships." In support of this deduction, they framed their argument to the Tax Court as follows:

> Unless there is a finding of fact that [Taxpayers'] investment in the Partnerships lacked sufficient profit motive under IRC § 183, [Taxpayers] are entitled to their out-of-pocket investment under IRC § 165. [Taxpayers] have conceded that if the Partnerships were partnerships for federal income tax purposes, then [Taxpayers] are not entitled to out-of-pocket deductions, however, [Taxpayers] argue that the Partnerships are not partnerships for federal income tax purposes." [Emphasis added.]

Although Taxpayers have not made the above concession so clear in

---

[6] Stanford v. Commissioner of Internal Revenue, 152 F.3d 450, 455 (5th Cir. 1998) (citing G.M. Trading Corp. v. Commissioner, 121 F.3d 977, 980 (5th Cir. 1997)).

their appellate briefs and oral arguments to us, they have premised their argument in favor of the deduction <u>solely</u> on the assertion that "Garfield and Cardinal are not partnerships for federal income tax purposes."  "If an enterprise, such as Garfield and Cardinal, is formed without any profit motive," their reasoning runs, "it cannot be a partnership  for federal income tax purposes and the activities of the partnership cannot be imputed to the investors for purposes of determining the applicability of 26 U.S.C. § 183 to the investors.  In such cases, a determination of profit motive must be made at the individual investor level."  Although this argument is certainly creative, it is without merit.

Section 761(a) defines what a "partnership" is for federal income tax purposes:

> **(a) Partnership.**  For purposes of this subtitle, the term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a corporation or a trust or estate.[7]

In keeping with this definition, the Tax Court observed that the Garfield and Cardinal limited partnerships

> entered into transactions, formed joint ventures, operated gas wells, and engaged in various other activities.  They carried on a financial operation or venture.  They are to be treated as partnerships under section 761(a) <u>even though the underlying activities of the partnerships lacked a profit objective under section 183</u>.  <u>The Garfield and Cardinal</u>

---

[7] 26 U.S.C. § 761(a).

> limited partnerships each had the formal indicia of partnership status and conducted themselves generally as partnerships. They are to be treated as partnerships.
> ...
> The parties' stipulation that activities and transactions of the Garfield and Cardinal limited partnerships were not entered into with a profit objective does not affect the status of the partnerships as partnerships for Federal income tax purposes.[8]

We agree with the distinction presented by the Tax Court on this issue: "[A] court decision that a partnership activity...lacks a profit objective...is not equivalent to[] a holding that the investors intended to create an entity other than a partnership."[9] Even though the Krause court determined that the activities engaged in by the partnerships lacked a profit objective, none can seriously contend that those who created these business entities did not intend to create entities "by means of which [a] business, financial operation, or venture [would be] carried on." We reject Taxpayers' argument that is premised on the proposition that the determination that the partnership activities lacked profit objective stripped the partnerships themselves of partnership status for federal income tax purposes. Accordingly, we affirm the Tax Court's determination that the Commissioner properly denied the Taxpayers' deductions for their initial investments in the partnerships.

---

[8] Copeland, 79 T.C.M. (CCH), at 2130 (emphasis added).

[9] Vanderschraaf v. Commissioner of Internal Revenue, 74 T.C.M. (CCH) 7, 11 (1997) (emphasis in original).

2. <u>I.R.C. § 6621(c) Interest</u>

In 1984, Congress amended I.R.C. § 6621 to provide for an increased rate of interest on substantial underpayments of tax attributable to tax-motivated transactions.[10] As amended by the Tax Reform Act of 1986, I.R.C. § 6621(c), which is applicable for the tax years here in question, provided:

**(c) Interest on substantial underpayments attributable to tax motivated transactions.**

**(1) In general.** In the case of interest payable under section 6601 with <u>respect to any substantial underpayment attributable to tax motivated transactions, the rate of interest established under this section shall be 120 percent of the underpayment rate established under this section.</u>

**(2) Substantial underpayment attributable to tax motivated transactions.** For purposes of this subsection, the term "<u>substantial underpayment</u> attributable to tax motivated transactions" <u>means</u> any underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions if the <u>amount of the underpayment for such year so attributable exceeds $1,000.</u>

**(3) Tax motivated transactions.**

(A) In general. For purposes of this subsection, the

_____

[10] Upon enactment in 1984, this provision was codified as I.R.C. § 6621(d). It was amended and redesignated as I.R.C. § 6621(c) by the Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2744, § 1511(c)(1)(A)-(C). I.R.C. § 6621(c) applies to interest accruing after December 31, 1984, even if the transaction was entered into before the date of its enactment. Tax Reform Act of 1984, § 144(c), Pub. L. No. 98-369, Div. A, July 18, 1984, 98 Stat. 494. Section 6621(c) was among several penalty provisions replaced with a single "accuracy-related" penalty by the 1989 Act. <u>See</u> H.R. Rep. No. 101-247, at 1388, 1394 (1989), <u>reprinted in</u> 1989 U.S.C.C.A.N. 1906, 2858-59, 2864. Despite its repeal, I.R.C. § 6621(c) still applies to tax years prior to 1989.

term "tax motivated transaction" means —

    (i)   any valuation overstatement (within the meaning of section 6659(c)),

    (ii)  any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8),

    (iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092),

    (iv)  any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period, and

    (v)   any sham or fraudulent transaction.

(B) Regulatory authority. The Secretary may by regulations specify other types of transactions which will be treated as tax motivated for purposes of this subsection and may by regulations provide that specified transactions being treated as tax motivated will no longer be so treated.... [Emphasis added.]

The Secretary exercised the authority granted in I.R.C. § 6621(c)(3)(B), and enacted Temporary Regulation § 301.6621-2T ("TTR § 301.6621-2T"), which provides, in relevant part:

Q-2. What is a tax motivated underpayment?
A-2. A tax motivated underpayment is the portion of a deficiency (as defined in section 6211) of tax imposed by subtitle A (income taxes) that is attributable to any of the following tax motivated transactions:

    (1)  ... a valuation overstatement within the meaning of section 6659(c)(1)[];

...

    (6)  Any deduction disallowed with respect to any other tax motivated transactions (see A-4 of this section).

...

Q-4. Are any transactions other than those specified in A-2 of this section and those involving the use of accounting methods under circumstances specified in A-3 of this section considered tax motivated transactions under A-2(6) of this section?
A-4. Yes. Deductions disallowed under the following provisions are considered to be attributable to tax motivated transactions:

    (1)  Any deduction disallowed for any period under section 183, relating to an activity engaged in by

10

> an individual or an S corporation that is not engaged in for profit....[11]

To summarize the foregoing, I.R.C. § 6621(c) authorized the imposition of 120% of the usual interest rate on underpayments of tax in excess of $1,000, but only if they were attributable to tax motivated transactions as defined either in I.R.C. § 6621(c)(3)(A) or in the regulations enacted by the Secretary pursuant to I.R.C. § 6621(c)(3)(B). Exercising this authority, the Secretary added a sixth category of tax motivated transactions to the five specified by the Congress in I.R.C. § 6621(c)(3)(A) by promulgating TTR § 301.6621-2T: "Any deduction disallowed for any period under section 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit."

As a threshold matter, Taxpayers argue that the Commissioner abused his discretion by imposing the tax from the date the payment was due, instead of giving them the opportunity "to resolve this matter without payment of interest at the penalty increased rate." At oral argument, they asked specifically that we reverse the Tax Court's decision and render judgment in their favor as to the interest that accrued between the due date of the relevant tax returns and the 1990 notice of deficiency. In support of this request, they argue that the legislative history of I.R.C. § 6621(c) shows that the section was intended to serve as a tool for managing the Tax Court's docket, by providing incentive for

---

[11] 26 C.F.R. § 301.6621-2T (emphasis added).

11

taxpayers to concede to the Commissioner's assessment of tax deficiencies without resorting to litigation. Instead of furthering the legislative intent, Taxpayers argue, the Commissioner's imposition of the I.R.C. § 6621(c) rate, of which they learned only when they received the notice of deficiency, amounted to a penalty. As noted above,[12] I.R.C. § 6621(c) expressly applies to interest accruing after December 31, 1984, even if the offending transaction was entered into before the date of its enactment. According to Taxpayers, the Commissioner's "penalizing" imposition of I.R.C. § 6621(c) interest is therefore particularly unfair on these facts, because their investment in the partnerships, which is the only transaction for which this penalty could serve any deterrent purpose, pre-dated the enactment of I.R.C. § 6621(c).

We are not persuaded by Taxpayers' arguments on this point. If I.R.C. § 6621(c) is applicable at all to Taxpayers' underpayment, it is applicable from the due date of the tax that they have been determined to owe. The initial language of I.R.C. § 6621(c) references "interest payable under section 6601." I.R.C. § 6601, in turn, states:

> **§ 6601. Interest on underpayment, nonpayment, or extensions of time for payment, of tax.**
>
> **(a) General rule.** If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on

---

[12] See supra note 9.

such amount at the underpayment rate established under section 6621 shall be paid <u>for the period from such last date to the date paid</u>.[13]

The application of this provision is mechanical, and we find no abuse of discretion by the Commissioner in calculating the interest from the date that Taxpayers' tax deficiency was due.

Neither are we persuaded by Taxpayers' invocation of the legislative intent of I.R.C. § 6621(c). In combination, I.R.C. §§ 6621(c) and 6601 are unambiguous, requiring the imposition of interest starting from "the last such date" of "the period" for which the unpaid tax was due. As the Commissioner emphasizes, in the absence of ambiguity, we are not to look beyond the plain wording of the statute or regulation to divine legislative intent.[14]

The larger question presented here is the propriety of imposing the I.R.C. § 6621(c) interest rate on Taxpayers' underpayment at all. In contesting the imposition of that rate, Taxpayers argue that the Tax Court erred in failing to analyze whether they, the Taxpayers, had a profit motive when they invested in the subject partnerships. Our close analysis of this argument leads us to conclude that indeed it was error, on these facts, to impose the I.R.C. § 6621(c) interest rate at all, irrespective of

---

[13] 26 U.S.C. § 6601(a) (emphasis added).

[14] <u>See, e.g.</u>, <u>Guilzon v. Commissioner of Internal Revenue</u>, 985 F.2d 819, 823-24 n.11 (5th Cir. 1993) (citing <u>Swearingen v. Owens-Corning Fiberglas Corp.</u>, 968 F.2d 559, 562 (5th Cir.1992)) ("Fifth Circuit law is crystal clear that when, as here, the language of a statute is unambiguous, this Court has no need to and will not defer to extrinsic aids or legislative history.").

13

the individual partners' profit motive, because there was no deduction disallowed under § 183, as TTR § 301.6621-2T pellucidly requires. We therefore reverse the Tax Court's ruling and hold that the I.R.C. § 6621(c) interest rate is inapplicable to Taxpayers' underpayment of tax.[15]

To repeat, I.R.C. § 6621(c) interest may be imposed only when there is a "substantial" underpayment of tax that is attributable to a tax motivated transaction as defined either in I.R.C. § 6621(c)(3)(A) or in the regulations enacted by the Secretary pursuant to I.R.C. § 6621(c)(3)(B). As any underpayment of $1,000 or more is deemed "substantial," that element of the section is not at issue. And, the Commissioner does not contend that any of the definitional categories of "tax motivated transaction" listed under I.R.C. § 6621(c)(3)(A) apply. Rather, the only kind of tax motivated transaction that is proffered by the Commissioner is the one found in TTR § 301.6621-2T, A4:

> Deductions disallowed under the following provisions are considered to be attributable to tax motivated transactions:
>
> (1) Any deduction disallowed for any period under [I.R.C.] section 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit. [Emphasis added.]

---

[15] Taxpayers also argue that it was an abuse of discretion for the Commissioner to refuse their settlement offer of a lump-sum payment equal to the amount of interest, calculated at the regular rate, that had accrued. As we conclude that the I.R.C. § 6621(c) interest rate should not be imposed at all, we need not address their argument premised on the settlement offer.

14

The Commissioner maintains that because the Tax Court determined that the partnerships in which Taxpayers invested lacked a profit motive under I.R.C. § 183, the requirements of TTR § 301.6621-2T were met, and it was proper to impose the I.R.C. § 6621(c) interest rate. This application of TTR § 301.6621-2T, which was adopted by the Tax Court and blessed by the Ninth and Tenth Circuits, impermissibly broadens the reach of this penalty.

Examination of the plain language of TTR § 301.6621-2T establishes that the essential elements of the type of tax motivated transaction defined by that regulation are as follows: There must be (1) a deduction (2) that is disallowed under I.R.C. § 183, (3) that is related to an activity engaged in by an individual or an S corporation, and (4) that is not engaged in for profit. Despite this clear and unambiguous regulatory mandate, however, the Commissioner's appellate brief asserts that, "[p]ursuant to [the Secretary's] statutory grant of authority, the Treasury Regulations under I.R.C. § 6621(c) adopt the profit motive test of § 183 as a litmus test for 'tax motivated transactions.'" Similarly, the Tax Court, in its Memorandum Opinion, quoted Hildebrand v. Commissioner of Internal Revenue,[16] as it insisted:

> Section 6621(c)(1) imposes an increased rate of interest on "any substantial underpayment attributable to tax motivated transactions," which include activities not engaged in for profit.[17]

---

[16] 28 F.3d 1024 (10th Cir. 1994).

[17] Copeland, 79 T.C.M (CCH), at 2131 (quoting Hildebrand, 28 F.3d at 1028).

15

These statements are both imprecise and flatly incorrect. The TTR § 301.6621-2T definition indisputably requires that a <u>deduction be disallowed under I.R.C. § 183</u> before the increased penalty may be imposed, <u>not</u> that an <u>activity</u> be determined <u>to lack profit motive</u> under the <u>factors</u> of I.R.C. § 183. Being disallowed under I.R.C. § 183 is <u>not</u> congruent with being tested — and found wanting — under the factors set forth in I.R.C. § 183. Indeed, the Taxpayers' deductions were <u>not</u> "disallowed under" I.R.C. § 183 but were, as the Commissioner notes, purportedly found to be lacking in profit motive under the <u>factors</u> set forth in the regulations that accompany I.R.C. § 183. More importantly, even if the Commissioner had wanted to disallow the Taxpayers' deductions under I.R.C. § 183 for purposes of TTR § 301.6621-2T, he could not have done so!

I.R.C. § 183 states:

> **§ 183. Activities not engaged in for profit.**
>
> **(a) General rule.** In the case of an <u>activity engaged in by an individual or an S corporation</u>, if <u>such activity</u> is not engaged in for profit, no deduction <u>attributable to such activity</u> shall be allowed under this chapter except as provided in this section.[18]

The plain language of the statute thus explicitly cabins its applicability to activities engaged in by <u>individuals</u> or <u>S corporations</u> — and, by virtue of the traditional maxim of statutory construction, <u>expressio</u> <u>unis</u> <u>est</u> <u>exclusio</u> <u>alterius</u> (the expression of one thing is the exclusion of others), precludes the section's applicability to partnerships. Yet the only parties that engaged

---

[18] 26 U.S.C. § 183(a) (emphasis added).

16

in an activity for other than profit were the two partnerships: No individual and no S corporation engaged in any activity here, with or without a profit motive.

The Commissioner nevertheless relies on the fact that the Tax Court in Krause sustained the Commissioner's disallowance of deductions "under section 183." The deduction having been disallowed "under section 183," argues the Commissioner, leads inexorably to the conclusion that the I.R.C. § 6621(c) increased interest rate applies. We disagree with the Commissioner's basic premise that these deductions were disallowed "under § 183."

In Krause, the Tax Court engaged in an analysis of whether the deductions at issue met the requirements of I.R.C. §§ 162 and 174.[19] Those two I.R.C. sections provide, in relevant part:

> **§ 162. Trade or business expenses.**
> **(a) In general.** There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on <u>any trade or business</u>....[20]

and

> **§ 174. Research and experimental expenditures.**
> **(a) Treatment as expenses. (1) In general.** A taxpayer may treat research or experimental expenditures which are paid or incurred by him during the taxable year in connection with his <u>trade or business</u> as expenses which are not chargeable to capital account. The expenditures so treated shall be allowed as a deduction.[21]

Both statutes require that the expense be paid or incurred in

---

[19] <u>Krause</u>, 99 T.C. 132, 168 (1992).

[20] 26 U.S.C. § 162(a) (emphasis added).

[21] 26 U.S.C. § 174(a) (emphasis added).

17

connection with a "trade or business" before the deduction is allowed. It is well-established that the determination whether an undertaking qualifies as a trade or business involves an inquiry into profit motive:

> Congress allows deductions under 26 U.S.C. § 162 for expenses of carrying on activities that constitute a taxpayer's trade or business, [or] under 26 U.S.C. § 174 for research and development expenses in connection with a trade or business....Expenditures may only be deducted under sections 162 [and] 174...if the facts and circumstances indicate that the taxpayer made them primarily in furtherance of a bona fide profit objective independent of tax consequences.[22]

It is equally accepted that in the partnership context, the profit motive inquiry focuses on the partnership, not the individual partners,[23] and that the factors in the Treasury Regulations to I.R.C. § 183 (for determining whether an "activity is...engaged in for profit") may be employed to determine the profit motive required by sections 162 and 174 exists.[24] It bears emphasizing, however,

---

[22] Agro Science Co. v. Commissioner of Internal Revenue, 934 F.2d 573, 576 (5th Cir. 1991) (citing 26 C.F.R. § 1.183-2(a) (1990); Mayrath v. Commissioner, 357 F.2d 209, 214 (5th Cir. 1966); Drobny v. Commissioner, 86 T.C. 1326, 1340 (1986)).

[23] See, e.g., Tallal v. Commissioner of Internal Revenue, 778 F.2d 275, 276 (5th Cir. 1985) ("When the taxpayer is a member of a partnership, we have interpreted 26 U.S.C. § 702(b) to require that business purpose must be assessed at the partnership level.").

[24] Id. (approving the use of the "criteria identified in Treasury Regulation § 1.183-2" for guidance in determining whether a partnership "lacked a bona fide profit objective"). See also Krause, 99 T.C. at 168 ("The factors set out in the Treasury regulations under section 183 generally are utilized in determining whether the requisite profit objectives are present

18

that the factors from I.R.C. § 183 are only <u>tools</u> for determining the requisite profit objective under I.R.C. §§ 162 and 174; deductions for partnership expenses are not allowed or disallowed directly under I.R.C. § 183 itself.

Despite this truism, however, the Tax Court in <u>Krause</u>, after employing the factors from the Regulations under I.R.C. § 183 in its analysis of the deductions claimed under I.R.C. §§ 162 and 174, concluded:

> In summary, presented to us in this case is a chain or multilayered series of obligations, stacked or multiplied on top of each other via the numerous partnerships to produce debt obligations in staggering dollar amounts, using a largely undeveloped and untested product, in a highly risky, very speculative, and non-arm's-length manner in an attempt to generate significant tax deductions for investors. The transactions did not, and do not, constitute legitimate for-profit business transactions.
> Losses of the partnerships are <u>disallowed under section 183</u>....[25]

The Tax Court's wording to the contrary notwithstanding, however, the deductions were <u>not</u> actually disallowed <u>under</u> I.R.C. § 183, but under I.R.C. §§ 162 and 174, neither of which are limited — as is § 183 — to activities engaged in by individuals and S corporations, to the exclusion of partnerships.[26]  I.R.C. § 183 provided the

---

under section 162 [and] section 174.").

[25] <u>Krause</u>, 99 T.C. at 175-76 (emphasis added).

[26] Even the Commissioner recognizes this limitation in his appellate brief when he states (emphasis ours): "The regulations under § 183 list a number of factors relevant to the determination of profit motive, and <u>those factors</u> have frequently

19

_Krause_ court with only the _factors_ for analysis, not statutory authority to allow or disallow deductions themselves.  To say that the deductions are disallowed "under section 183" impermissibly conflates the I.R.C. sections in question and thereby glosses over this crucial distinction.

The Tax Court again endorsed this gloss, however, when it considered the instant case.  Adopting the rationale offered by the Ninth Circuit,[27] the Tax Court stated,

> [T]he Secretary has authority to define certain transactions as tax motivated, _the Secretary has defined transactions lacking a profit motive under section 183 as tax motivated_, the transactions in this case lack a profit motive under section 183, petitioners' activities relating to these transactions are therefore tax motivated.[28]

That, of course, is _not_ what TTR § 301.6621-2T states.  Again, that regulation designates as "tax motivated" "[a]ny _deduction disallowed_ for any period _under_ _section_ _183_, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit"; and, again, the deductions disallowed in _Krause_ (which ruling was stipulated to apply here) were _disallowed under § 162_ and

---

been applied by the courts in determining whether a profit motive exists for all sorts of entities, including partnerships and corporations, _to which the limitations on deductibility of § 183 do not apply_."

[27] _See_ _Hill v. Commissioner of Internal Revenue_, 204 F.3d 1214, 1220 (9th Cir. 2000).  The _Hill_ court was, in turn, relying on the Tenth Circuit's reasoning in _Hildebrand v. Commissioner_, 28 F.3d 1024 (10th Cir. 1994).

[28] _Copeland_, 79 T.C.M. (CCH), at 2131 (emphasis added).

§ 174, employing only the profit objective factors in the Treasury Regulations accompanying § 183. The Ninth Circuit's and Tax Court's pronouncements that "transactions lacking a profit motive under section 183" constitute tax motivated transactions under I.R.C. § 6621(c) impermissibly broadens the reach of this punitive interest provision. The definition of a tax motivated transaction found in TTR § 301.6621-2T ineluctably requires that the underpayment of tax be attributable to deduction disallowed under I.R.C. § 183, and such a disallowance simply did not take place in the instant case — nor could it have.

As the foregoing makes clear, we respectfully differ with our fellow circuits regarding the application of I.R.C. § 6621(c) via TTR § 301.6621-2T.[29] We are, of course, mindful of the admonition of the Ninth Circuit that "[u]niformity among Circuits is especially important in tax cases to ensure equal and certain administration of the tax system."[30] Nevertheless, the plain language of TTR § 301.6621-2T leaves us no choice, for it compels our conclusion. It is certainly conceivable that the Secretary meant to classify as tax motivated any deduction that was determined to lack a profit motive, as the Commissioner and Tax Court contend. Indeed, TTR § 301.6621-

---

[29] See, e.g., Hill v. Commissioner of Internal Revenue, 204 F.3d 1214 (9th Cir. 2000); Hildebrand v. Commissioner of Internal Revenue, 28 F.3d 1024 (10th Cir. 1994).

[30] Hill, 204 F.3d at 1217 (quoting Pacific First Fed. Sav. Bank v. Commissioner, 961 F.2d 800, 803 (9th Cir. 1992) (quoting First Charter Financial Corp. v. United States, 669 F.2d 1342, 1345 (9th Cir. 1982))).

2T could have been drafted to do just that: apply when partnership transactions tested for profit motive using the factors from I.R.C. § 183 were found to lack such a profit motive. TTR § 301.6621-2T, however, unambiguously directs a different analysis. As the Commissioner insisted when arguing that the rules for the starting-date of the interest rate accrual should be mechanically applied,[31] when the statutory (or regulatory) language is clear, we must look no further.

Neither do our earlier rulings applying I.R.C. § 6621(c) compel a different conclusion. In <u>Heasley v. Commissioner of Internal Revenue</u>,[32] we considered a non-partnership case in which the Commissioner sought to impose the I.R.C. § 6621(c) interest rate by means of the statutory definition relating to a valuation overstatement, or, alternatively, employing TTR § 301.6621-2T. Having determined earlier in the <u>Heasley</u> opinion that the underpayment of tax was not attributable to a valuation overstatement, we considered the alternative basis for the increased interest rate, TTR § 301.6621-2T, and rejected that, as well. Accepting for the purposes of that inquiry the simplified articulation of the test in TTR § 301.6621-2T ("The I.R.S. defines transactions 'not engaged in for profit' as tax-motivated"[33]), we advanced to the next step of the analysis and determined that the

---

[31] <u>See</u> <u>supra</u> note 12 and accompanying text.

[32] 902 F.2d 380 (5th Cir. 1990).

[33] <u>Heasley</u>, 902 F.2d at 385.

Tax Court erred in failing to consider the individual taxpayers' profit motive, and, further, that if the Tax Court had conducted the proper inquiry it <u>would</u> have found the requisite profit motive.[34] The net result, therefore, was the same as in the instant case, albeit for slightly different reasons: disapproval of the Commissioner's attempt to impose the I.R.C. § 6621(c) interest rate using TTR § 301.6621-2T.

In <u>Heasley</u>, we reached that result by implicitly granting the Commissioner's interpretation of TTR § 301.6621-2T for the sake of argument, yet finding that the taxpayers had a profit motive. Here, we never reach the question whether profit motive is to be tested at the individual or partnership level, because we begin (and end) with an examination of that which the <u>Heasley</u> court assumed <u>arguendo</u> —— the Commissioner's interpretation and application of TTR § 301.6621-2T.

Our three subsequent encounters with I.R.C. § 6621(c) are likewise distinguishable, for none of them implicates TTR § 301.6621-2T. In those three partnership cases, <u>Lukens v. Commissioner of Internal Revenue</u>,[35] <u>Chamberlain v. Commissioner of Internal Revenue</u>,[36] and <u>Durrett v. Commissioner of Internal Revenue</u>,[37] the Commissioner sought to impose the increased interest rate by

---

[34] <u>Heasley</u>, 902 F.2d at 386.

[35] 945 F.2d 92 (5th Cir. 1991).

[36] 66 F.3d 729 (5th Cir. 1995).

[37] 71 F.3d 515 (5th Cir. 1996).

23

means of I.R.C. § 6621(c)(3)(A)(v), the statutory category of tax motivated transactions implicating sham or fraudulent transactions. Sham, though, is not the category chosen by the Commissioner in the instant case; rather, the TTR § 301.6621-2T category of disallowance under I.R.C. § 183 is the thrust here. We note in passing that in all three sham cases, we rested our affirmance of the imposition of the I.R.C. § 6621(c) interest rate at least in part on the recognition of the Tax Court's factual finding that the individual Taxpayers lacked a profit motive. But again, as explained above, we decline in the instant case even to reach the question of whose profit motive to analyze, because the requisite disallowance of a deduction under I.R.C. § 183 simply did not take place.

To summarize, then, TTR § 301.6621-2T defines a tax motivated transaction, for purposes of I.R.C. § 6621(c), as "[a]ny deduction disallowed for any period under section 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit." The unambiguous plain language of TTR § 301.6621-2T thus expressly limits its applicability to instances in which a deduction has been disallowed under I.R.C. § 183; and that section is itself limited in application to activities of individuals and S corporations. The only role I.R.C. § 183 played in the instant case was to provide analytical tools —— the factors found in the Treasury Regulations —— for assessing the partnership's profit objective, for purposes of sections 162 and 174. To repeat for emphasis, in promulgating TTR § 301.6621-2T, the Secretary could have defined a

24

tax motivated transaction as one for which a <u>profit motive, as analyzed under the factors of § 183, was found lacking</u>, but the Secretary did not. Instead, TTR § 301.6621-2T defines a tax motivated transaction as a <u>deduction that has been disallowed under § 183</u>, and no such disallowance has been or could have been made in this case. It was therefore error for the Tax Court to adopt unquestioningly the Ninth Circuit's assumption that a finding of a lack of profit motive using the factors of I.R.C. § 183 could, without more, support the imposition of I.R.C. § 6621(c) interest via TTR § 301.6621-2T. Accordingly, we reverse the Tax Court's ruling and hold that the I.R.C. § 6621(c) interest rate cannot be applied to the Taxpayers' underpayment of tax. We therefore remand this action to the Tax Court for entry of an appropriate judgment consistent herewith.

AFFIRMED in part; and REVERSED in part and REMANDED for entry of judgment.