# United States Court of Appeals for the Federal Circuit

_____

**GORDON W. BUSH, REOLA BUSH,
LAWRENCE R. CATUZZI, BARBARA V. CATUZZI,
GORDON R. COOKE, JENNIFER L. COOKE,
GOPALA K. DEREBAIL, MEMALATHA DEREBAIL,
ALBERT V. GUDE, DONNA C.GUDE,
LAWRENCE S. LEWIN, ROBERT V. MCQUILLAN,
CATHERINE D. MCQUILLAN, KIKUO NAKAHARA,
JEANETTE T. NAKAHARA (DECEASED),
LESLIE A. SPITZACK, MARY C. SPITZACK,
BARRY S. STRAUCH, AND EVELYN M. STRAUCH,**
*Plaintiffs-Appellants,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

_____

2012-5051

_____

Appeal from the United States Court of Federal Claims in case no. 10-CV-661, Judge Nancy B. Firestone.

_____

Decided: May 30, 2013

_____

THOMAS E. REDDING, Redding & Associates, P.C., of Houston, Texas, argued for plaintiff-appellant. With him on the brief was SALLIE E. GLADNEY.

BETHANY B. HAUSER, Attorney, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were KATHRYN KENEALLY, Assistant Attorney General, and RICHARD FARBER, Attorney.

---

Before RADER, *Chief Judge*, NEWMAN and MAYER, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

The appellants are nineteen individual taxpayers who were partners of the Denver-based Dillon Oil Technology Partnership in tax years 1983 and 1984. In 2003, after over a decade of litigation, the IRS assessed penalties in accordance with now repealed I.R.C. §6621(c), which penalizes "substantial" underpayments of tax "attributable to tax motivated transactions" ("TMTs"). The appellants paid the tax and penalties in 2004, and, in 2006, initiated a refund suit in the United States Court of Federal Claims. The court dismissed the appellants' suit for lack of subject matter jurisdiction under the Tax Equity and Fiscal Responsibility Act ("TEFRA"),[1] I.R.C. §7422(h), which provides that individual partners may not bring tax challenges relating to subject matter "attributable to a partnership item." Rather, such claims must be brought in a partnership-level suit by the partnership representative or Tax Matters Partner ("TMP"). On this ground, we affirm the dismissal. The appellants' claim is an impermissible collateral attack.

## BACKGROUND

In tax years 1983 and 1984, the Dillon Oil partnership reported significant losses on its oil and gas technology

---

[1] *Bush v. United States*, 101 Fed. Cl. 791 (Fed. Cl. 2011).

investments. These losses were passed through to the partners including appellants, who claimed the losses as deductions on their personal income tax returns.

In 1987 and 1988, the IRS determined, with respect to the partnership tax returns, that most of the Dillon Oil losses claimed in 1983 and 1984 were not deductible, and issued Final Partnership Administrative Adjustments ("FPAAs") stating several reasons for its decision, including:

> (a) It has not been established that the underlying events, transactions and expenditures occurred in fact or in substance;

> (b) It has not been established that the claimed deductions originated in a trade or business or in a transaction entered into for profit;

> * * *

> (e) It has not been established that the notes executed by the partners in favor of the partnership are not non-recourse, are not contingent, are not speculative and have economic substance;

> * * *

> In the event the transactions are substantiated as to amount and nature of the item and it is held that the transactions have economic-substance, it is determined that the partners are not at risk within the meaning of Internal Revenue Code Section 465 for any amounts in excess of those actually paid in cash to the partnership, and thus said losses are in excess of the partners adjusted basis.

*See* 1983 FPAA ¶1, J.A. 67–68; *see also* 1984 FPAA ¶1, J.A. 162–63 (stating similar reasons).

The IRS also sent FPAAs to other similarly situated Denver-based partnerships. Dillon Oil, along with these

partnerships,[2] filed consolidated Tax Court suits for each tax year under the caption *Vulcan Oil Technology Partners v. Commissioner*. The petitions alleged a number of errors by the IRS, including that "the Commissioner has erroneously proposed an addition to tax under Code Section 662l(c), . . ." Tax Court Petition ¶4(B), No. 21530–87 (July 2, 1987); *see also* Tax Court Petition ¶¶3, 4(N), No. 16768–88 (June 30, 1988) ("it is error to impose penalties").

Dillon Oil's Tax Court cases were stayed pending resolution of *Krause v. Commissioner*, a test case for over 2,000 related cases. *Krause* involved oil and gas transactions, primarily trades in debt obligations and license fees, claimed as losses on partners' tax returns. After a fifteen week trial, the *Krause* court found that these transactions lacked "profit objective" as required of deductible losses under I.R.C. §183, and disallowed the losses. *Krause v. C.I.R.*, 99 T.C. 132, 176 (1992). The court also affirmed the IRS's imposition of TMT penalty interest under §6621(c) based on the transactions, stating that

> By regulation, among the types of transactions that are considered to be tax-motivated transactions within the meaning of section 6621(c) are those with respect to which the related tax deductions are disallowed under section 183 for lack of profit objective. In light of our findings as to the lack of profit objective, petitioners are liable for increased interest under section 6621(c).

---

[2]    Vulcan Oil Technology Partners; Vanguard Oil Technology Partners; Drake Oil Technology Partners; Derringer Oil Technology Partners 1981; Derringer Oil Technology Partners 1982; Crowne Oil Technology Partners; and Carlton Oil Technology Partners, Ltd.

*Id.* at 180 (citations omitted), *aff'd sub nom. Hildebrand v. Commissioner*, 28 F.3d 1024, 1028 (10th Cir. 1994).

The *Krause* decision had a predictable effect on the *Vulcan Oil* suits. In 1998, several *Vulcan Oil* partnerships moved the Tax Court to require the IRS to settle on pre-*Krause* terms. *See Vulcan Oil Tech. Partners v. C.I.R.*, 110 T.C. 153 (1998). The terms the partnerships sought would have permitted tax deductions

> for the amount of cash that investors had invested in the [ ] tax shelters and no additions to tax or penalties . . . other than increased interest under section 6621(c) or its predecessor section 6621(d).

*Id.* at 155. But the partnerships' motions were denied as untimely. *Id.* at 164. The Tax Court held that the partners who had not settled their cases with the IRS prior to the decision in *Krause* "were to be bound by the opinion in *Krause*." *Id.* at 154–55.

After this ruling, Dillon Oil's TMP "disappeared" and ceased performing his duties to the partners. Appellants' Br. 11. On November 28, 2001, and December 20, 2001, the IRS moved to dismiss the *Vulcan Oil* suits for lack of prosecution. The motions stated that the IRS would make adjustments to Dillon Oil's FPAA in accordance with *Krause*. The Tax Court sent Orders to Show Cause to the Dillon Oil partners, asking "why this case should not be dismissed for failure properly to prosecute and that there are adjustments to partnership items [consistent with *Krause*]." Show Cause Order 2. The Dillon Oil partners did not respond, and on June 13, 2002, the *Vulcan Oil* suits were dismissed. *E.g.*, Order of Dismissal and Decision, No. 16768–88 (June 13, 2002). The Dillon Oil partners did not appeal.

Following the *Vulcan Oil* dismissal, the IRS sent Form 4549A to the Dillon Oil partners.[3] The Form stated that the partners would be assessed enhanced penalty interest under I.R.C. §6621(c) for tax years 1983 and 1984. It identified the amount of underpayment subject to TMT penalty interest, and stated that TMT penalty interest would be assessed at "120%".[4] Appellants paid the penalty interest in 2004, with the last payment made no later than October 18, 2004.

On April 5, 2006, the appellants initiated this lawsuit in the Court of Federal Claims. The complaint alleged that *Krause* "was wrong as a matter of law," and that the Dillon Oil partners "are not bound by [its] outcome." Compl. ¶¶21(j), 32(j). The government moved to dismiss for lack of jurisdiction, citing this court's decisions in *Keener v. United States*, 551 F.3d 1358 (Fed. Cir. 2009),

---

[3] *E.g.,* Letter to Gordon and Jennifer Cooke concerning tax year 1983, J.A. 290–93; Letter to Gordon and Jennifer Cooke concerning tax year 1984, J.A. 294–98. The appellants stipulated that the outcome of the Cookes' penalty interest claims would bind the penalty interest claims of all other plaintiffs/appellants. Joint Stipulation, *Bush v. United States*, No. 10-cv-661-NBF, (Fed. Cl. Jan. 13, 2011), ECF. No. 19

[4] Appellants argue that the Forms they received did not "impart enough information to give the taxpayer[s] fair notice" of their TMT obligations because the Forms erroneously computed the interest due as "$0.00." Reply Br. 20–21. But the appellants are incorrect in their assertion that "[n]owhere do the Forms 4549A state the actual rate(s) the IRS will use to assess penalty interest." Reply Br. 21. To the contrary, the Forms expressly stated that "TMT interest will accrue and be assessed at 120% of underpayment in accordance with IRC 6621(c)." *See* J.A. 292, 296.

and *Prati v. United States*, 603 F.3d 1301 (Fed. Cir. 2010). The government also stated that "the substantive question of whether the Dillon Oil partnership entered into a tax-motivated transaction has already been answered" in the *Vulcan Oil* suit. Gov't Mot. to Dismiss 12, ECF No. 28. The appellants countered that because *Krause* was wrongly decided, "no TMT determinations were ever made." Taxpayers' Opp. 4, 15–16, ECF No. 37. The appellants argued that in *Keener*, this court stated that dismissal is not proper "'when no partnership-level determination has been made that the transactions were tax motivated.'" *Id.* 3–4 (quoting 551 F.3d at 1367).

The Court of Federal Claims granted the government's motion to dismiss, explaining that "it is clear that the *Vulcan Oil* court understood that the Dillon Oil partnership would be bound by the *Krause* decision, including the imposition of TMT penalties under §183." 101 Fed. Cl. 791, 797 n.9. The court further explained that

> The *Vulcan Oil* court had previously held that *Krause* would apply to non-settling partners like the plaintiffs. The Dillon Oil partnership TMP had an opportunity to challenge those calculations at the partnership level by objecting to the show cause order, but elected not to object. At its core, the plaintiffs' objection is to the IRS's and *Vulcan Oil* court's application of *Krause* to the Dillon Oil partnership, a partnership-level issue.
>
> . . . The plaintiffs' arguments regarding the *Krause* decision and the *Krause* court's misapplication of §183 plainly would require this court to examine the Dillon Oil partnership transactions to determine if the transactions identified in the modified calculations are not covered by §183.

*Id.* at 798. The appellants timely appealed.

DISCUSSION

A dismissal for lack of subject matter jurisdiction is a ruling of law, and receives plenary determination. *Ferreiro v. United States*, 350 F.3d 1318, 1324 (Fed. Cir. 2003). As the party seeking the exercise of jurisdiction, the appellants have the burden of establishing that jurisdiction exists. *Keener*, 551 F.3d at 1361.

TEFRA statute I.R.C. §7422(h) bars partner-level suits "attributable to partnership items . . . except as provided in section 6228(b) or section 6230(c)."[5] *See also Schell v. United States*, 589 F.3d 1378, 1382 (Fed. Cir. 2009) ("TEFRA limits a partner's ability to seek a refund based on adjustments made to the partnership's return by depriving all courts of jurisdiction to hear partner refund claims where the refund is 'attributable to partnership items'").

Under TEFRA, the term "'partnership item' generally encompasses items 'required to be taken into account for the partnership's taxable year,' and those 'more appropriately determined at the partnership level than at the partner level.'" *Schell*, 589 F.3d at 1381 (quoting I.R.C. §6231(a)(3)). A tax item is "attributable to" a partnership item if it is "due to, caused by, or generated by" a partnership item. *Keener*, 551 F.3d at 1365. A "nonpartnership item" is "an item which is (or is treated as) not a partnership item." I.R.C. §6231(a)(4). "The tax treatment of nonpartnership items requires partner-specific determinations that must be made at the individual partner level." *Duffie v. United States*, 600 F.3d 362, 366 (5th Cir.

---

[5] The appellants do not assert that either §6628(b) or §6630(c) applies here. Reply Br. 24. Section 6228(b) relates to partnership items that have been converted to non-partnership items by notice of the IRS. Section 6230(c) relates to refunds arising out of "erroneous computations, etc."

2010). In certain instances, partnership items "cease to be partnership items" and become nonpartnership items, such as when the Secretary provides notice to a partner that an item shall be treated as a nonpartnership item, or when the Secretary enters into a settlement agreement with the partner with respect to such items. I.R.C. §6231(b).

## I.

Appellants state that although Dillon Oil and its partners were bound by the opinion in *Krause*,[6] the IRS had no authority to impose TMT penalty interest following *Vulcan Oil* because "no partnership-level TMT was ever made" in *Krause*. Appellants' Br. 28. Appellants state that they "do not seek to relitigate *Krause*," because *Krause* was a "non-TMT determination" and they had no reason to appeal it. Reply Br. 3. For support, appellants rely on *Copeland v. Commissioner*, 290 F.3d 326 (5th Cir. 2002), wherein the Fifth Circuit held that *Krause* erred in imposing §6621(c) penalty interest "under §183." *Id.*

The government states that "[s]ince both the FPAAs and *Krause* determined that the transactions in issue were tax-motivated, the effect of the dismissal of Dillon Oil's petition [in *Vulcan Oil*] was to make final the determination that the partnership transactions were tax-motivated." Gov't Br. 11. According to the government, this case is not materially different from this court's dismissals in *Keener* and *Prati*, because there is no meaningful difference between dismissal for failure to prosecute as compared to a settlement between the IRS and an individual partner, such as in *Prati*, 603 F.3d at 1308, and *Keener*, 551 F.3d at 1360. Gov't Br. 14.

---

6    *See* Appellants' Br. 32 ("Dillon Oil was a Denver-based Elektra partnership and the Cookes were unsettled partners; therefore, the *Vulcan* interlocutory opinion bound both them and the IRS to the *Krause* opinion.").

We address the parties' various arguments in turn.

## II.

The appellants' representation that they are not attempting to relitigate *Krause* is not accurate. The Court of Federal Claims correctly noted that the appellants' complaint in this case specifically stated that *Krause* "was wrong as a matter of law." *Bush*, 101 Fed. Cl. at 794 n.6. Moreover, despite the appellants' attempts to recharacterize *Krause* as a "non-TMT determination," it is inescapable that "[t]he *Krause* Court . . . expressly imposed enhanced interest under §6621(c)" as the Court of Federal Claims found. *Id.* at 794 (citing *Krause*, 99 T.C. at 180).

The question that remains is whether the appellants were bound by all of *Krause*, including its conclusion that "petitioners are liable for increased interest under section 6621(c)," or whether the appellants can potentially escape the *Krause* TMT finding if it was incorrectly decided. The Court of Federal Claims held that *Krause* was binding in all respects, "including the imposition of TMT penalties under §183," and that plaintiffs' arguments regarding the *Krause* decision would require re-examination of Dillon Oil partnership transactions "to determine if the transactions identified in the modified calculations are not covered by §183." 101 Fed. Cl. at 798.

We agree with the Court of Federal Claims. The *Vulcan Oil* court held that Dillon Oil was bound by "the opinion" in *Krause*—not merely a portion of the opinion as now interpreted by the appellants. The appellants' opportunity to challenge *Krause* passed when *Vulcan Oil* was dismissed. "When a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *C.I.R. v. Sunnen*, 333 U.S. 591,

597 (1948). This rule applies "even if obtained upon a default." *Riehle v. Margolies*, 279 U.S. 218, 225 (1929).

*Copeland* is of no assistance to appellants. In *Copeland*, the taxpayers stipulated that *Krause* generally "controlled," but specifically carved out an exception for "the conclusion that I.R.C. §6621(c) applies" and adjudicated that issue separately. 290 F.3d at 328–29. The taxpayers then litigated §6621(c) to the Court of Appeals for the Fifth Circuit without ever failing to prosecute or having their case dismissed. *See Copeland v. C.I.R.*, 79 T.C.M. (CCH) 2127 (T.C. 2000), *aff'd in part, rev'd in part,* 290 F.3d 326 (5th Cir. 2002). Unlike the taxpayers in *Copeland*, the Dillon Oil partners did not challenge or appeal any aspect of the *Krause* decision in the then-pending *Vulcan Oil* suit. When *Vulcan Oil* was dismissed, the TMT finding in *Krause* became binding on Dillon Oil at the partnership-level, just as the taxpayers in *Copeland* would have been bound had they not appealed.

*Copeland* also serves to undermine the appellants' argument that *Krause* was a "non-TMT determination." If that were true, the taxpayers in *Copeland* would not have separately litigated the imposition of §6621(c) penalty interest and appealed to the Fifth Circuit. The *Copeland* taxpayers knew *Krause* was a TMT determination and challenged it accordingly.

For these reasons, we agree with the Court of Federal Claims that in order to set aside the IRS's imposition of TMT penalty interest, it would be necessary to relitigate the *Vulcan Oil* court's decision to bind Dillon Oil to "the opinion of *Krause*." 101 Fed. Cl. at 798. That is a partnership level issue; it affects the entire partnership, and there are no "partner-specific determinations that must be made at the individual partner level." *Duffie*, 600 F.3d at 366. Simply put, the appellants' claim is "'more appropriately determined at the partnership level than at the

partner level.'" *Schell*, 589 F.3d at 1381 (quoting I.R.C. §6231(a)(3)). TEFRA contemplates "one proceeding" for the adjudication of partnership adjustments. *AD Global Fund, LLC ex rel. N. Hills Holding, Inc. v. United States*, 481 F.3d 1351, 1355 (Fed. Cir. 2007).

III.

The Court of Federal Claims held that our decisions in *Keener* and *Prati* are not meaningfully distinguishable from the present case, and we agree.

In *Prati*, we held that a partner-level suit claiming a refund for §6621(c) interest was barred by TEFRA §7422(h) because it fundamentally sought to relitigate issues settled in a prior partnership-level suit. 603 F.3d at 1308. The *Prati* litigants argued—much like the appellants here—that they were not directly challenging whether their transactions were tax motivated; rather they claimed only to challenge the IRS's *application* of Treasury Regulation §301.6621–2T, A–5. *Id.* We concluded that this regulation-based argument was "disingenuous" because, if successful, it would "invalidate" the IRS's FPAA determination that the partnership's transactions were tax motivated—which was not a part of the settlement agreement. *Id.* In other words, we held that the IRS's finding of a TMT could not be challenged at the *partner*-level based on the argument that the IRS misapplied a rule or statute following a partnership-level settlement that was silent on that issue.

Likewise, in *Keener*, we held that a partner-level suit seeking refund of §6621(c) penalty interest was barred under §7422(h) because the IRS issued FPAAs stating that the partnership engaged in sham transactions, and the taxpayers entered into settlements which did not alter that finding. 551 F.3d at 1367. The taxpayers argued that no partnership-level determination was actually made because the settlement agreements were silent on the TMT issue, but we rejected that argument on the

basis that the FPAAs characterized the partnership transactions as "a series of sham transactions," wherein sham transactions are clearly TMTs under §6621(c)(3)(A)(v). *Id.*

Here, the Court of Federal Claims found *Prati* and *Keener* unavoidable on the basis that a challenge to a §6621(c) penalty interest assessment is "inherently" a dispute over the proper characterization of the partnerships' transactions, and barred by §7422(h). 101 Fed. Cl. at 797 (citing *Prati*, 603 F.3d at 1308)).

To the extent that the Court of Federal Claims held that a challenge to the imposition of §6621(c) penalty interest is *always* inherently a dispute over the proper characterization of the partnerships' transactions, we disagree. In *Keener*, we explicitly declined to "decide whether §7422(h) precludes jurisdiction over every claim for a refund of penalty interest imposed pursuant to §6621(c)." 551 F.3d at 1366 n.7. In *Prati* and *Keener*, the FPAAs stated that the taxpayers' transactions were "shams," and therefore TMTs by statute. If that were not the case, it may have been necessary to point to some other TMT determination to resolve the jurisdictional question.

In this case, the FPAAs did not use the term "sham" to characterize Dillon Oil's transactions. The FPAAs stated that the transactions lacked "profit-motive" and "economic substance," and possibly lacked "risk within the meaning of Internal Revenue Code Section 465." Thus, it was necessary for the Court of Federal Claims to point to a TMT determination other than the "sham" language of *Keener* and *Prati*. The court did so in finding it "clear that the *Vulcan Oil* court understood that the Dillon Oil partnership would be bound by the *Krause* decision, including the imposition of TMT penalties under §183." 101 Fed. Cl. at 797 n.9.

We decline to address, in the first instance, whether the Dillon Oil FPAAs support an independent TMT finding akin to the "sham" transactions of *Keener* and *Prati*. Dillon Oil's Tax Court petitions certainly suggest that such a finding might be found, since the petitions expressly stated that the Commissioner "erroneously proposed an addition to tax under Code Section 662l(c)." But we need not decide this issue because, unlike in *Keener* and *Prati*, the appellants here were bound by the determination of *Krause* as incorporated into *Vulcan Oil*.

On this record, it is irrelevant whether *Krause* was rightly or wrongly decided. Dillon Oil's partners did not appeal the dismissal of their partnership-level suit in *Vulcan Oil*. Although appellants argue that "[t]here was no reason" to appeal the *Vulcan Oil* dismissal because "there was no determination in that dismissal of a TMT," we are not persuaded. *See* Oral Argument 11:00–11:18, available at http://www.cafc.uscourts.gov/oral-argument-recordings/all/bush.html. The *Krause* decision unambiguously imposed TMT penalty interest. *See* 99 T.C. at 180 ("In light of our findings as to the lack of profit objective, petitioners are liable for increased interest under section 6621(c)"). Indeed, that specific portion of *Krause* was appealed in no fewer than three circuits. *Hildebrand*, 28 F.3d 1024; *Hill v. C.I.R.*, 204 F.3d 1214 (9th Cir. 2000); *Copeland*, 290 F.3d 326. It is not reasonable to read *Krause* as a "non-TMT determination" as appellants urge.

## IV.

To the extent the Court of Federal Claims stated that it does not have *jurisdiction* to determine whether "there was ever a finding supporting TMT penalty interest," we conclude that the court misspoke. A court always has jurisdiction to determine whether it has jurisdiction. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988) ("If a motion to dismiss for lack of subject matter jurisdiction [ ] challenges the truth of the

jurisdictional facts alleged in the complaint, the district court may consider relevant evidence in order to resolve the factual dispute."). The court itself stated that "in considering a motion to dismiss for lack of subject matter jurisdiction, a court may look beyond the pleadings and 'inquire into jurisdictional facts' to determine whether jurisdiction exists." 101 Fed. Cl. at 796 (citing *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)).

Here, the court made several findings relating to the jurisdictional question of whether a TMT determination was ever made. The court found that the appellants were bound by *Krause*, and found that *Krause* expressly imposed §6621(c) penalty interest under §183. Based on these findings, the court concluded that this case was not materially different from *Keener* and *Prati*, and dismissed. 101 Fed. Cl. at 797–98 ("the present case involves a partnership-level determination one step removed from the determinations made in *Prati* and *Keener*. However, this difference does not alter the outcome."). We affirm on these grounds.

Precedent does not, as the Court of Federal Claims stated, preclude the court from examining whether a TMT finding was made. To the contrary, in both *Keener* and *Prati*, this court relied on TMT findings of "sham" transactions in order to affirm the dismissal of partner-level suits under §7422(h). Here, the relevant TMT finding was made in *Krause* and became binding on appellants through *Vulcan Oil*, as the Court of Federal Claims found.

## CONCLUSION

The appellants' refund claims were properly dismissed under §7422(h). The appellants cannot collaterally attack *Krause* or *Vulcan Oil* at this stage.

## AFFIRMED