# United States Court of Appeals for the Federal Circuit

2009-5010

WILLIAM H. SCHELL and RUBY G. SCHELL,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.


Thomas E. Redding, Redding & Associates, P.C., of Houston, Texas, argued for plaintiffs-appellants. With him on the brief were Sallie W. Gladney and Teresa J. Womack.

Bruce R. Ellisen, Attorney, Appellate Section, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were John A. DiCicco, Acting Assistant Attorney General, and Arthur T. Catterall, Attorney.

Appealed from: United States Court of Federal Claims

Judge Susan G. Braden

# United States Court of Appeals for the Federal Circuit

2009-5010

WILLIAM H. SCHELL and RUBY G. SCHELL,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 04-CV-1743, Judge Susan G. Braden.

_____

DECIDED:  December 22, 2009

_____

Before LOURIE, ARCHER, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

William H. Schell and Ruby G. Schell (collectively "Taxpayers") appeal from the decision of the Court of Federal Claims ("trial court") dismissing their complaint that alleged the Internal Revenue Service ("IRS") unlawfully denied their claim for a tax refund for the tax years 1993 and 1995.  See Schell v. United States, 84 Fed. Cl. 159 (2008).  Because we find that Taxpayers do not have standing to challenge the actions of the IRS, we affirm the trial court's finding that it lacked jurisdiction over the Taxpayers' refund claims.

BACKGROUND

In the early 1980s, American Agri-Corp, Inc. ("AMCOR") organized a number of limited partnerships and solicited investments from individuals. In the mid-1980s, William H. Schell invested in two limited partnerships offered by AMCOR. Specifically, Mr. Schell held a limited partnership interest in Canyon Desert Vineyards ("CDV") during the tax years 1985-1993 and in Vista Ag-Realty Partners ("VARP") during the tax years 1986-1995. In 1985, CDV reported losses on farming expenses of approximately $7.4 million and $196,000 as "other deductions." Mr. Schell reported his pro rata share of his loss, which totaled $73,811, on his 1985 tax return. In 1986, VARP reported losses on farming expenses of approximately $11.1 million and $291,000 as "other deductions." Mr. Schell reported his pro rata share of his loss, which totaled $69,840, on his 1986 tax return.

After examining the returns of these partnerships, the IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") to each partnership, disallowing farming expenses and other deductions. The listed reasons for complete disallowance included the IRS' findings that "[t]he partnership's activities constitute a series of sham transactions" and "[t]he partnership's activities lack economic substance." Both CDV and VARP filed petitions for readjustment of these findings in the United States Tax Court. CDV and VARP dissolved in 1993 and 1995, respectively.

In April 1997, while CDV and VARP's petitions for readjustment were pending before the Tax Court, the Taxpayers entered into two settlement agreements with the IRS. Under these partner-specific settlement agreements, the $7.6 million net loss reported by CDV in 1985 was reduced by fifty five percent, or approximately

$3.4 million. The $11.1 million net loss reported by VARP in 1986 was reduced by fifty percent, or approximately $5.6 million. The settlement agreements made no mention of the "sham transaction" determinations in the FPAAs.

In 1998, the Taxpayers filed an "AMCOR-Related Refund Claim" for the tax year 1995, decreasing their 1995 income from VARP by $9,522. As a result, the IRS refunded $3,930 plus interest. In 1999, the Taxpayers filed a refund claim for the tax year 1993 and a second refund claim for the tax year 1995, claiming that "[a]s a direct consequence of the settlement and the corrections of the erroneous reporting of a termination distribution, there was a substantial basis in the partnership interest and a resulting loss upon the dissolution and termination of the partnership, which loss is the basis of this claim for refund."

In 2001, the Tax Court issued decisions in the partnership-level proceedings. The decisions found that the adjustments to partnership income and expense were attributable to transactions "which lacked economic substance . . . so as to result in a substantial distortion of [partnership income and/or expense]."

In 2002, the IRS rejected the Taxpayers' second refund claim for the tax year 1995. The IRS also informed the Taxpayers that AMCOR claims are treated as capital losses and it included instructions for claiming these losses. The IRS has not taken any action on the 1993 refund claim.

Instead of resubmitting their claim, the Taxpayers filed a complaint in the trial court, alleging that the IRS unlawfully denied the Taxpayers' claim for a tax refund for the tax years 1993 and 1995. The Taxpayers' theory was that the 1997 settlement agreements increased their basis of the partnership interest by the amount of loss the

settlement agreements disallowed. The government filed a motion to dismiss, arguing that the trial court lacked subject matter jurisdiction under I.R.C. § 7422(h), or in the alternative, that the Taxpayers failed to state a claim under Court of Federal Claims Rule 12(b)(6). The court granted the government's motion holding that: (1) the losses identified in the Taxpayers' 1999 tax refund claims concern "partnership items," which the Taxpayers have no standing to pursue under § 7422(h); and (2) the exception to § 7422(h) under I.R.C. § 6230(c)(1)(B) does not apply because the 1997 settlement agreements did not alter the FPAA's findings that the activities of CDV and VAPR were sham transactions and thus did not convert the partnership items into non-partnership items.

The Taxpayers timely appealed to this court. We have jurisdiction to review the final decision of the trial court pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

The Court of Federal Claims' decision to grant the government's motion to dismiss for lack of jurisdiction is a matter of law that we review de novo. Mudge v. United States, 308 F.3d 1220, 1224 (Fed. Cir. 2002). As the party seeking the exercise of jurisdiction, the Taxpayers have the burden of establishing that jurisdiction exists. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991).

### I.

A partnership is not a taxable entity. Partnerships neither incur tax liability, nor do they pay taxes. Before Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), each partner filed his own tax return reflecting his distributive share of the partnership's gains and losses, and IRS audited each individual partner in

the partnership.  As a consequence, the IRS could not guarantee consistent treatment of a partnership item for each partner in a partnership.  To address this concern, TEFRA was enacted and the treatment of partnership items is now resolved in a unified partnership-level proceeding.  See I.R.C. § 6221 (2006).  Partnerships are required to file informational returns reflecting the distributive shares of income, gains, deductions, and credits attributable to their partners, while individual partners are responsible for reporting their pro rata share of tax on their income tax returns.  See I.R.C. § 701.

TEFRA defines three types of items: "partnership item," "nonpartnership item," and "affected item."  "Partnership item" generally encompasses items "required to be taken into account for the partnership's taxable year," and those "more appropriately determined at the partnership level than at the partner level."  I.R.C. § 6231(a)(3).  Such items include the income, gains, losses, deductions, and credits of a partnership.  Treas. Reg. § 301.6231(a)(3)-1(a) (2009).  The term also includes "the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing and characterization of income, credit, gain, loss, deduction, etc."  Treas. Reg. § 301.6231(a)(3)-1(b).  "Nonpartnership items" are those items that are not partnership items, and an "affected item" is defined as "any item to the extent such item is affected by a partnership item."  I.R.C. § 6231(a)(4)-(5).  An example of an "affected item" is a partner's tax basis in his partnership interest, which is affected by partnership items such as partnership income or loss.

If the IRS decides to adjust any "partnership items" reflected on the partnership's return, it must notify the individual partners of the adjustment through a FPAA.  See I.R.C. § 6223.  For ninety days after a FPAA issues, the tax matters partner has the

exclusive right to challenge the proposed adjustments in United States Tax Court, the Court of Federal Claims, or a United States District Court. I.R.C. § 6226(a).

At the partner level, a partner may contest the tax liability by paying the assessment and filing a refund action in the Court of Federal Claims. I.R.C. § 6226(e). However, TEFRA limits a partner's ability to seek a refund based on adjustments made to the partnership's return by depriving all courts of jurisdiction to hear partner refund claims where the refund is "attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c)." I.R.C. § 7422(h).

Alternatively, a partner may choose to settle his individual tax liability with the IRS. I.R.C. § 6224. When a partner chooses to settle his individual tax liability with the IRS, that partner would no longer participate in the partnership level proceeding, and instead would be bound by the terms of his settlement agreement. See I.R.C. § 6224. If the IRS enters into a settlement agreement with any partner with respect to partnership items, other partners are entitled to a consistent settlement as to those partnership items. I.R.C. § 6224(c)(2).

## II.

The Taxpayers argue that their 1999 refund claims are not barred by § 7422(h) because they are not attributable to partnership items; and even if they are, the § 6230(c)(1)(B) exception to the § 7422(h) jurisdictional bar should apply.

Specifically, the Taxpayers argue that their refund claims are not barred by § 7422(h) because they are attributable to the loss of Schell's tax basis in his partnership interests upon termination of the partnerships. The government does not dispute that the Taxpayers' basis in their partnership interest is not a partnership item.

Instead, the government argues that the Taxpayers' refund claims are "attributable to partnership items." See I.R.C. § 7422(h) (emphasis added). This court has held that the applicability of § 7422(h) turns on whether the Taxpayers' refund claims are "due to, caused by, or generated by" a partnership item. Keener v. United States, 551 F.3d 1358, 1365 (Fed. Cir. 2009) (quoting Electrolux Holdings, Inc. v. United States, 491 F.3d 1327, 1331 (Fed. Cir. 2007).

It is widely accepted that a transaction that lacks economic substance is not recognized for federal income tax purposes. See id. at 1365; see also Coltec Indus., Inc. v. United States, 454 F.3d 1340, 1353-54 (Fed. Cir. 2006); Lerman v. Comm'r, 939 F.2d 44, 45 (3d Cir. 1991) (stating that a transaction that "is devoid of economic substance . . . simply is not recognized for federal taxation purposes"); Kirchman v. Comm'r, 862 F.2d 1486, 1490 (11th Cir. 1989); Salley v. Comm'r, 464 F.2d 479, 483 (5th Cir. 1972); Winn-Dixie Stores, Inc. v. Comm'r, 113 T.C. 254, 278 (1999) (stating that "denial of recognition means that such a transaction cannot be the basis for a deductible expense"). Thus, a sham transaction, devoid of economic substance, cannot be the basis for a deductible loss. Therefore, the Taxpayers' refund claims are based on the assertion that the partnerships' transactions were not shams. This court has previously held that the question of whether a partnership transaction is a "sham" is a "partnership item." Keener, 551 F.3d at 1365-66. Accordingly, the Taxpayers' claims are "attributable to" partnership items and the trial court correctly determined that it lacked jurisdiction over the Taxpayers' refund claims.

The Taxpayers also argue that the § 6230(c)(1)(B) exception to the § 7422(h) jurisdictional bar should apply. Section 6230(c)(1)(B) provides an exception to § 7422(h):

> A partner may file a claim for refund on the grounds that . . . the Secretary failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a).

When a partner chooses to settle his individual tax liability with the IRS, the settling individual's partnership items are converted to non-partnership items, but only when the IRS enters into a settlement agreement with the partner with respect to such items. See I.R.C. § 6231(b)(1)(C) ("[T]he partnership items of a partner for a partnership taxable year shall become nonpartnership items as of the date . . . the Secretary or the Attorney General (or his delegate) enters into a settlement agreement with the partner with respect to such items . . . .") (emphasis added). Thus, when a partner files an action for a refund attributable to partnership items that have been converted through a settlement agreement, the jurisdictional bar of § 7422(h) no longer applies. See id.

The Taxpayers argue that, even if their claims are attributable to partnership items, the IRS "failed to allow credit or make a refund . . . attributable to the application to the partner" of the 1997 settlement agreements. They argue that the 1997 settlement agreements effectively determined that the partnerships' transactions were not shams, and the sham-transaction issue was converted to non-partnership item under § 6231(b)(1)(C).

It is undisputed that the 1997 settlement agreements did not explicitly address the sham-transaction issue. The Taxpayers argue, however, that the IRS implicitly conceded that the partnerships' transactions were not shams because: (1) § 6224(c) settlements are comprehensive; and (2) the IRS allowed partial deductions, whereas no deduction is allowed for sham transactions. Both of these arguments are without merit. The Taxpayers' argument that all § 6224(c) settlements are comprehensive stems from a regulation that reads, "[s]ettlements shall be comprehensive, that is, a settlement may not be limited to elected items." Temporary Regulations, 52 Fed. Reg. 6779, 6787 (Mar. 5, 1987) (issuing Temporary Regulation § 301.6224(c)-3T(b)). As the government correctly notes, however, the cited regulation does not require that every § 6224(c) settlement be "comprehensive"; rather, it requires that, to obtain a consistent settlement, a partner who enters into a settlement agreement must agree to all the terms that were in the settlement agreement that the IRS previously entered into with other partners. See Keener v. United States, 76 Fed. Cl. 455, 465 (2007), aff'd, 551 F.3d 1358 (Fed. Cir. 2009). In addition, the Taxpayers' argument that the IRS implicitly conceded that the partnerships' transactions were not shams by allowing partial deductions is wholly without merit. The fact that the IRS chose to settle does not follow that it conceded that the transactions were not shams. In addition, that the FPAAs listed "sham transaction" as one of several grounds for disallowing partnership does not, as the Taxpayers suggest, render the FPAAs less conclusive. Keener, 551 F.3d at 1366.

CONCLUSION

Because the 1997 settlement agreement did not change the FPAA's findings that the activities of CDV and VARP were sham transactions, the sham-transaction issue

was not converted into a non-partnership item, and the Taxpayers' refund claims necessarily involve resolution of "partnership items." Accordingly, the Taxpayers do not have standing to seek adjudication, and the trial court correctly determined that it lacked jurisdiction over the Taxpayers' refund claims.

<u>AFFIRMED</u>

COSTS

Costs to the Appellee.