Lawrence R. McCANN and Cecil McCann, Plaintiffs,

v.

UNITED STATES, Defendant.

James H. Epps and Arbelia Epps, Plaintiffs,

v.

United States, Defendant.

Nos. 06–216T, 06–615T.

United States Court of Federal Claims.

May 24, 2012.

Thomas E. Redding, Redding & Associates, P.C., Houston, Texas, for plaintiffs. Of counsel were Sallie W. Gladney and Teresa J. Womack, Redding & Associates, P.C., Houston, Texas.

Jennifer Dover Spriggs, Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Kathryn Keneally, Assistant Attorney General, Tax Division, and David I. Pincus, Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

This is the latest chapter in the longstanding tax saga involving American Agri–Corp, Inc. ("AMCOR"). In the 1980s, plaintiffs Lawrence R. and Cecil McCann, and James H. and Arbelia Epps, invested in various tax shelter partnerships sponsored by AMCOR. In Final Partnership Administrative Adjust-

ments ("FPAAs") of the returns of AMCOR's partnerships, the Internal Revenue Service ("IRS") disallowed certain deductions related to those partnerships, and the resultant underpayments of taxes were resolved in stipulated decisions entered by the United States Tax Court and through various settlements. Akin to other AMCOR participants, the McCanns and Eppses now seek refunds of the taxes, interest, and penalty interest paid to resolve those underpayments. The government has moved to dismiss the McCanns' and Eppses' amended complaint for lack of jurisdiction, arguing that plaintiffs' claims could only have been heard in a "partnership-level" tax proceeding, while the present case is a "partner-level" tax proceeding.

## BACKGROUND

A brief recitation of background facts suffices because other opinions have described in detail the AMCOR partnerships and the litigation stemming from them. *See, e.g., Prati v. United States,* 603 F.3d 1301, 1302–04 (Fed.Cir.2010); *Keener v. United States,* 551 F.3d 1358, 1359–60 (Fed.Cir.2009); *Kettle v. United States,* 104 Fed.Cl. 699, 702–04 (2012). The McCanns and Eppses invested in several AMCOR partnerships in the 1980s. Mr. McCann was a limited partner in two entities, Emperor Seedless–85 and Agri–Cal Venture Associates. Am. Compl. ¶¶ 7, 20.[1] Mr. Epps was a limited partner in two other entities, Travertine Flame Associates and Canyon Desert Vineyards. Am. Compl. ¶¶ 34, 46. In 1990 and 1991, the IRS sent FPAAs disallowing the deductions attributable to the AMCOR partnerships and demanding that the subscribing partners pay the resulting deficiencies. Litigation in the Tax Court ensued, and the disputes were resolved in two ways: some partners, like the Eppses, settled directly with the IRS via Forms 870–P(AD). Am. Compl. ¶¶ 37, 49; *see also, e.g.,* Pls.' Resp. to Def.'s Mot. to Dismiss ("Pls.' Opp'n") Ex. 21 (Eppses' Form 870–P(AD) regarding Canyon Desert Vineyards, executed Mar. 6, 1999). Other plaintiffs, like the McCanns, agreed to be bound

---

1. Unless otherwise indicated, citations to case filings refer to those in *McCann v. United States,* No. 06–216T (Fed.Cl. filed Mar. 17, 2006).

*McCann* was consolidated with *Epps v. United States,* No. 06–615T (Fed.Cl. filed Sept. 5, 2006), on May 5, 2011.

by stipulated decisions entered by the Tax Court. Am. Compl. ¶¶ 10, 23; *see, e.g., Emperor Seedless-85 v. Commissioner*, No. 15039-91 (T.C. July 19, 2001) (attached to Pls.' Opp'n as Ex. 17).

Following these settlements and stipulated decisions, AMCOR participants, including the McCanns and Eppses, paid the tax deficiencies and then filed numerous actions for refund in this court between 2001 and the present. The taxpayers in each case have contended that the earlier settlements and stipulations were invalid because the predicate FPAAs were issued too late, after the statute of limitations had expired. The taxpayers have also contended that they did not owe the IRS interest at the higher, penalty rate imposed under former 26 U.S.C. ("I.R.C.") § 6621(c) (repealed 1989). The bulk of the cases, including the two instant actions, were stayed while several representative cases went forward. *See McCann*, No. 06-216T, Order of Aug. 23, 2006, ECF No. 7; *Epps*, No. 06-615T, Order of Dec. 6, 2006, ECF No. 6. That process culminated in the Federal Circuit's decisions in *Keener v. United States*, 551 F.3d 1358, and *Prati v. United States*, 603 F.3d 1301. In those cases, the court rejected both the taxpayers' statute-of-limitations claims and their penalty-interest claims. The court held that both sets of claims implicated "partnership-level" items, which could not be adjudicated in the "partner-level" suits brought in this court. *See Keener*, 551 F.3d at 1366; *Prati*, 603 F.3d at 1307, 1309.

Following the conclusion of the *Keener* and *Prati* appeals, this court on May 5, 2011 lifted the stays that had been entered and consolidated the McCanns' and Eppses' actions. Plaintiffs argue here, as other AMCOR plaintiffs have contended in substantially identical fashion, that their claims are distinguishable from those dismissed in *Keener* and *Prati*. *Compare* Pls.' Opp'n at 1-2, *with, e.g., Dahlberg v. United States*, 104 Fed.Cl. 214, 218-20 (2012). Thus far, those arguments have been unavailing and the un-

derlying claims have been dismissed for lack of jurisdiction. *See Kettle*, 104 Fed.Cl. at 703-04; *Dahlberg*, 104 Fed.Cl. at 221-23.[2]

## JURISDICTION

██ A taxpayer seeking to invoke the court's jurisdiction must establish it by a preponderance of the evidence. *Keener*, 551 F.3d at 1361. The Tucker Act grants this court jurisdiction over claims for federal tax refunds. 28 U.S.C. § 1491(a)(1); *see Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir.2002); *Dominion Res., Inc. v. United States*, 97 Fed.Cl. 239, 246 (2011). However, the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97-248, 96 Stat. 324 (codified in various sections of the I.R.C., including I.R.C. §§ 6221-6232), limits this court's tax refund jurisdiction when a case implicates partnerships. Specifically, TEFRA mandates "a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level." *Keener*, 551 F.3d at 1361 (quoting *In re Crowell*, 305 F.3d 474, 478 (6th Cir.2002)); *see* I.R.C. § 6221. Thus, no partner-level "action may be brought for a refund attributable to partnership items," I.R.C. § 7422(h), because such claims should be resolved during the partnership-level proceeding. Because the suits brought by the McCanns and Eppses are partner-level proceedings, jurisdiction over their claims turns on whether the McCanns and Eppses request "a refund attributable to partnership items," *i.e.*, whether they "are due to, caused by, or generated by a partnership item." *Keener*, 551 F.3d at 1365 (internal quotation marks omitted). If so, then the claims are barred by I.R.C. § 7422(h).

A "partnership item" is defined by TEFRA as "any item required to be taken into account for the partnership's taxable year ... to the extent regulations ... provide that ... such item is more appropriately determined at the partnership level than at

---

2. *Kettle* and *Dahlberg* dismissed claims based on arguments virtually identical to those made in the present case. Additionally, other recent Court of Federal Claims decisions have dismissed AMCOR claims presenting similar but not

identical arguments. *See, e.g., Barry v. United States*, 103 Fed.Cl. 425 (2012); *Northcutt v. United States*, 103 Fed.Cl. 184 (2012); *Fournier v. United States*, 102 Fed.Cl. 495 (2011); *Martin v. United States*, 101 Fed.Cl. 664 (2011).

the partner level." I.R.C. § 6231(a)(3). A "Treasury regulation further defines a 'partnership item' to include 'the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc.'" *Keener*, 551 F.3d at 1362 (emphasis omitted) (quoting Treas. Reg. § 301.6231(a)(3)–1(b)). Meanwhile, a "nonpartnership item" is "an item which is (or is treated as) not a partnership item." I.R.C. § 6231(a)(4). Additionally, an "affected item" is an item with a partner-level component which "is affected by a partnership item." I.R.C. § 6231(a)(5); *see Duffie v. United States*, 600 F.3d 362, 375 (5th Cir. 2010); *Field v. United States*, 328 F.3d 58, 60 (2d Cir.2003); *Zfass v. Commissioner*, 118 F.3d 184, 192 (4th Cir.1997).

## ANALYSIS

Plaintiffs present two claims. First, they contend that the IRS waited too long to adjust their tax liabilities because the original adjustments of taxes and interest made by the IRS in the 1980s occurred after the statute of limitations had expired as to them. Hence, plaintiffs argue, their payments in satisfaction of the resulting assessments constituted overpayments, which should be refunded. Second, plaintiffs contend that they were improperly assessed penalty interest on their taxes owed. Plaintiffs were assessed penalty interest at 120% of the normal statutory rate for "substantial underpayment[s] attributable to tax motivated transactions." I.R.C. § 6621(c)(1) (repealed 1989). Plaintiffs argue that the IRS never in fact determined that their partnership transactions were tax motivated, so imposition of the heightened interest rate was improper.

### A. *The Statute of Limitations Claims*

■ In *Keener* and *Prati*, the Federal Circuit dismissed AMCOR claims involving the same statute of limitations at issue in this case. I.R.C. § 6501 is the general statute of limitations for tax assessments against individuals. It requires the IRS to bring an assessment within three years from the time the individual files a tax return. *Prati*, 603 F.3d at 1306. I.R.C. § 6229, part of TEFRA, reiterates that time limit and allows

it to be extended under certain circumstances. *Id.* at 1307. The taxpayers in *Keener* argued that the IRS had brought its assessments after the expiration of the time limit stated in I.R.C. § 6229, so the assessments were void and any resulting payments were refundable overpayments. The court held that the taxpayers' claims, even if meritorious, were nonetheless barred by I.R.C. § 7422(h). The court reasoned that "the limitations claim raised by [t]axpayers should not be litigated in a partner-level proceeding because it affects the partnership as a whole." *Keener*, 551 F.3d at 1364 (citing *Weiner v. United States*, 389 F.3d 152, 156–57 (5th Cir.2004)). Undaunted, the taxpayers in *Prati* argued that the IRS had also transgressed the general statute of limitations found at I.R.C. § 6501, and *that* statute of limitations did not implicate a partnership item. The court disagreed. It explained:

> In *Keener*, the court's reasoning was directed to the statute of limitations defense *as a general matter* and was not limited ... to [S]ection 6229.... [T]he court's reference to [S]ection 6229 was merely a shorthand way of referring to the taxpayers' *overall statute of limitations claim* ....
>
> Based on *Keener*, we hold that the statute of limitations issue is a partnership item and that the [taxpayers] were required to raise the limitations issue in the partnership-level proceeding prior to either entering settlement or stipulating to judgment in the Tax Court.

*Prati*, 603 F.3d at 1307 (emphasis added).

The McCanns and Eppses nonetheless contend that their statute of limitations claims fall outside *Prati's* extensive ambit. They invoke I.R.C. § 6226(d)(1)(B), which excludes partners from partnership-level proceedings when "the period within which any tax attributable to [relevant] partnership items may be assessed against that partner [has] expired." Based on this language, plaintiffs conclude that they are not bound to the earlier settlements and stipulations because TEFRA forbade their participation in those proceedings. *See* Pls.' Opp'n at 32.

This reasoning was rejected by *Prati* itself: "As for the [taxpayers'] argument that

they were barred from participating in a proceeding to decide whether the statute of limitations had run because the statute of limitations had already run, that argument is circular and has no merit." 603 F.3d at 1307 n. 4. The Federal Circuit's determination is conclusive for this court. *See Garner v. United States,* 85 Fed.Cl. 756, 759 (2009) (citing *Crowley v. United States,* 398 F.3d 1329, 1335 (Fed.Cir.2005)); *see also Kettle,* 104 Fed.Cl. at 704. Further, even if the McCanns and Eppses were not bound by the earlier proceedings, that fact would be irrelevant in this context. As made explicit in *Prati,* the statute of limitations issue is categorically a partnership item. Thus, any refund claim based on a violation of the statute of limitations is an action "for a refund attributable to [a] partnership item[ ]," I.R.C. § 7422(h), and barred.

### B. *The Penalty Interest Claims*

1. *Whether penalty interest is a partnership item.*

Plaintiffs next contest the assessment of interest on their underpaid taxes at a higher, penalty rate. From 1984 to 1989, the tax code provided that "any substantial underpayment attributable to tax motivated transactions" would be assessed at 120% of the usual underpayment rate. I.R.C. § 6621(c)(1) (repealed 1989); *see Keener,* 551 F.3d at 1364 n. 5. Tax motivated transactions were defined to include, among other things, "any use of an accounting method ... which may result in a substantial distortion of income for any period" and "any sham or fraudulent transaction." I.R.C. § 6621(c)(3)(A)(iv)–(v) (repealed 1989). When the IRS initially disallowed the AMCOR partners' deductions via the FPAAs, it did so at least in part because "the partnerships' activities constituted a series of sham transactions." *Keener,* 551 F.3d at 1360; *see* Pls.' Opp'n Ex. 2, at 36a; *id.* Ex. 3, at 41; *id.* Ex. 4, at 48; *id.* Ex. 6, at 64. The AMCOR partners who settled with the IRS using Forms 870–P(AD), like the Eppses, agreed that their settlements "may result in an additional tax liability ... plus interest as provided by law." *Keener,* 551 F.3d at 1360; *see* Am. Compl. Ex. G, at 45; *id.* Ex. I, at 64. Similarly, the AMCOR partners who partici-

pated in the stipulated decisions in the Tax Court, like the McCanns, agreed that the IRS would "assess interest which has accrued ... under former I.R.C. § 6621(c)." Mot. for Entry of Decisions ¶ 20, *Coachella Fruit Growers v. Commissioner,* No. 012531–90 (T.C. granted July 19, 2001) (attached to Pls.' Opp'n as Ex. 1, at 10).

Even so, plaintiffs contend that neither the IRS' initial FPAAs, nor the Form 870–P(AD) settlements, nor the stipulated decisions, establish a foundation for assessing penalty-rate interest against them. Specifically, the McCanns argue that the Tax Court decisions to which they are bound never determined that their transactions were shams. Correlatively, the Eppses argue that their FPAAs and Form 870–P(AD) settlements never determined that their transactions were shams. Without such a finding of sham, plaintiffs reason, there is no partnership-level basis for assessing the penalty, so their claims cannot be attributable to partnership items. Therefore, plaintiffs conclude, I.R.C. § 7422(h) does not bar this court from reviewing the penalty. *See* Pls.' Opp'n at 9, 26–28.

The government responds by arguing that this entire line of argument is foreclosed by I.R.C. § 7422(h). *Keener* and *Prati* held that a dispute over whether a partnership's transactions were shams is a dispute over "the nature of the partnership['s] transactions and ... the nature of a partnership's transactions is a partnership item" barred by I.R.C. § 7422(h). *Keener,* 551 F.3d at 1366; *see Prati,* 603 F.3d at 1308 ("[A] dispute over the proper characterization of the partnerships' transactions ... is barred."). The government interprets *Keener* and *Prati* to mean that *any* claim related to former Section 6621 penalty interest is inevitably a dispute over a partnership item and therefore cannot be heard in this court. *See* Def.'s Reply at 6–7.

The government's interpretation is incorrect. In essence it asks the court to regard former Section 6621 as a talisman, the introduction of which forbids any exercise of juridical power. Such an understanding of former Section 6621 would forestall the court from ascertaining its jurisdiction in the first place. That is untenable, for "it is familiar

law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (citing *United States v. Mine Workers*, 330 U.S. 258, 291, 67 S.Ct. 677, 91 L.Ed. 884 (1947)). *See generally* 13D Charles Alan Wright & Arthur R. Miller et al., *Federal Practice & Procedure* § 3536 (3d ed. 2012).

*Keener* and *Prati* do not hold otherwise. They dismissed claims for refunds of penalty interest under former Section 6621 because those claims particularly disputed the nature of partnership transactions, not because they invoked Section 6621 *qua* Section 6621. *See Keener*, 551 F.3d at 1366; *Prati*, 603 F.3d at 1308.[3] In both cases, the dispute centered on whether the partnership-level proceedings had correctly determined that the partnership transactions were shams. Inquiry into the correctness of that determination, the Federal Circuit reasoned, would be tantamount to revisiting the earlier finding of sham. *See Keener*, 551 F.3d at 1365 ("Taxpayers' refund claims are based on the assertion that the partnerships' transactions were not shams. This characterization of a partnership's transaction is a partnership item." (emphasis added)); *Prati*, 603 F.3d at 1308 ("[Taxpayers'] contention is disingenuous because ..., if accepted, [it] would invalidate the determination that the partnerships' transactions were tax motivated."); *cf. Dahlberg*, 104 Fed.Cl. at 221 ("The *Keener* plaintiffs' contention that their underpayments were not attributable to a tax motivated transaction, in fact, was an attempt to have their transactions not deemed shams."). Notably, however, *Keener* and *Prati* did not state that *all* claims involving former Section 6621 necessarily would be attributable to partnership items. *See Keener*, 551 F.3d at 1366 & n. 7 (no bar when the transaction is "dependent on facts unique to a particular partner," such as whether a partner's underpayment was substantial (citing *Prochorenko v. United States*, 243 F.3d 1359, 1363 (Fed. Cir.2001))). Rather, they made the common-sense observation that a claim which would

operate to overturn an earlier partnership-level finding is, of course, attributable to a partnership item.

Inherent in this reasoning was a determination by the Federal Circuit that the earlier proceeding had in fact made a finding of sham. As stated in *Prati*:

> The Pratis also maintain that the settlements they entered were comprehensive and that those settlements did not include any determinations as to the nature or characterization of the partnerships' transactions. *To the extent they are disputing the finding that those transactions were tax motivated,* that line of argument remains barred by [S]ection 7422(h).

603 F.3d at 1308 (emphasis added); *see also id.* at 1309 ("The Tax Court's decision clearly equated lack of economic substance with 'sham transaction.'"). The "finding" referred to here is the determination by the IRS, approved by the Tax Court and in partner-entered settlements, and accepted as conclusive by the Federal Circuit, that the partnerships were engaged in tax motivated transactions.

The Federal Circuit acknowledged that this scenario stands in contrast to the "potential situation where the IRS imposes penalty interest when *no* partnership-level determination has been made that the transactions were tax motivated." *Keener*, 551 F.3d at 1367. Such a situation exists when there is no perceptible partnership-level determination on which to impose penalty interest on an individual partner based upon former Section 6621(c). In addition, the situation also exists when the IRS imposes penalty interest based on a partnership-level determination, but those determinations do not apply to a particular partner. As explained by the Fifth Circuit in a similar AMCOR case, "interest under [former] Section 6621(c)[ ] is an 'affected item' that has both partnership and nonpartnership components.... [A] partner-level challenge of the nonpartnership-item component of Section 6621(c) interest [includes] ... *whether it was attributable to the*

---

**3.** This stands in contrast to claims related to the statute of limitations found at I.R.C. § 6501 and supplemented at I.R.C. § 6229. As discussed *supra, Keener* and *Prati* were explicit that any claim invoking those sections is inevitably attributable to a partnership item and thus barred in a partner-level proceeding.

*transaction previously determined* at the partnership level to be tax-motivated." *Duffie*, 600 F.3d at 372, 380 (emphasis added). If no such determination is made as to a particular partner, then the penalty interest is not based on a partnership transaction involving that partner. Consequently, a claim brought by that partner would not be attributable to a partnership item (and barred by I.R.C. § 7422(h)), because no underlying partnership item would exist.[4]

As a result, the threshold inquiry in this court is not simply whether plaintiffs dispute penalty interest assessed under former Section 6621(c) in the abstract. Rather, the question is whether the imposition of such penalty interest is based on a finding, applicable to the challenging taxpayer, that the partnership-level transaction was a tax-motivated transaction. If so, jurisdiction is barred by I.R.C. § 7422(h). If not, the matter may be adjudicated further.

2. *Whether plaintiffs' penalty interest claim is attributable to a partnership item.*

■ In accord with these observations, plaintiffs argue that they do not owe interest under former Section 6621(c) because the IRS never determined that their particular transactions were shams. *See* I.R.C. § 6621(c)(3)(A)(v) (repealed 1989). For this argument to be successful, plaintiffs must distinguish *Keener* and *Prati*, both of which held that AMCOR taxpayers, including one involved in the same partnerships as plaintiffs,[5] had indeed engaged in sham transactions.

The McCanns contend that they do not owe interest under former Section 6621(c) because the Tax Court decisions binding them did not determine that they had entered into sham transactions. The McCanns point to differences in the wording of their stipulated decisions and the stipulated decisions found wanting in *Prati*. The Tax Court stipulation at issue in *Prati* stated in relevant part, "the foregoing adjustments are attributable to the partnerships['] reporting of transactions, as described at former I.R.C. § [ ]6621(c)(3)(A)(v), which lacked economic substance." Pls.' Opp'n at 15 (emphasis omitted) (quoting *Travertine Flame Assocs.*, No. 15059-91, slip op. at 2 (T.C. July 19, 2001) (attached to Pls.' Opp'n as Ex. 19, at 156)). The stipulations binding the McCanns stated, "the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § [ ]6621(c)(3)(A)(v)." *Id.* (emphasis omitted) (quoting, *e.g., Emperor Seedless-85*, No. 15039-91, slip op. at 2). To bolster their contention, the McCanns rely on evidence not before the *Keener* or *Prati* courts: the affidavit of Frederick H. Behrens, the AMCOR partner who apparently negotiated the stipulated decisions. Mr. Behrens states that, in the course of those negotiations, "[t]he IRS sought to have me concede the transactions were shams. I refused." Pls.' Opp'n at 16.

■ The McCanns' attempt to distinguish their case is unconvincing. First, the submission of Mr. Behrens' affidavit is unhelpful. The affidavit purports to present new facts as to the meaning of the earlier Tax Court decisions, but "[t]he interpretation of a court order involves a question of law," not fact. *Williams v. Principi*, 310 F.3d 1374, 1377 (Fed.Cir.2002) (citing *YBM Magnex, Inc. v. International Trade Comm'n*, 145 F.3d 1317, 1320 (Fed.Cir.1998), *overruled on other grounds by Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046 (Fed.Cir. 2002) (en banc)); *cf. Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1170 (Fed. Cir.2008) ("[It is] for the court, not the jury, to interpret this court's prior opinion."). Further, even if the court were to consider

---

4. Correlatively, the IRS' notice of computational adjustment respecting the partner-level treatment of a partnership item, *see* I.R.C. § 6231(a)(6), might be determined to be inadequate or improper after judicial inquiry. *See Kercher v. United States*, No. 4:07–cv–310, 2012 WL 874325, at *9–10 (E.D.Tex. Mar. 14, 2012); *McGann v. United States*, 76 Fed.Cl. 745, 758–61 (2007).

5. Ronald C. Prati, a plaintiff in *Prati*, was a partner in Emperor Seedless–85, like Mr. McCann, and in Canyon Desert Vineyards, like Mr. Epps. *Prati v. United States*, 81 Fed.Cl. 422, 424 (2008), *aff'd*, 603 F.3d 1301.

the Tax Court stipulations as contracts rather than as legal precedents, the affidavit still would be superfluous. Where the stipulations are "unambiguous, they must be given their plain and ordinary meaning, and the court may not resort to extrinsic evidence to interpret them." *McAbee Constr., Inc. v. United States,* 97 F.3d 1431, 1435 (Fed.Cir. 1996) (internal quotation marks and citation omitted) (quoting *Alaska Lumber & Pulp Co. v. Madigan,* 2 F.3d 389, 392 (Fed.Cir.1993)) (citing *Interwest Constr. v. Brown,* 29 F.3d 611, 615 (Fed.Cir.1994); *Beta Sys., Inc. v. United States,* 838 F.2d 1179, 1183 (Fed.Cir. 1988)). In express terms, the stipulations "equated lack of economic substance with 'sham transaction' by specifically citing I.R.C. § 6621(c)(3)(A)(v)." *Prati,* 603 F.3d at 1309; *see also Duffie,* 600 F.3d at 373 (citing *Nault v. United States,* 517 F.3d 2, 5 (1st Cir.2008); *Kimball v. Commissioner,* 95 T.C.M. (CCH) 1306, 2008 WL 862339 (2008)). The only difference between the *Prati* stipulations and those before this court is the placement of the phrase "as described." But that syntactical difference cannot change the meaning of the McCanns' stipulations, for they still "specifically cit[e] I.R.C. § 6621(c)(3)(A)(v)." According to *Prati,* the inclusion of that citation suffices to establish a finding of sham. And so it does.

Even if the stipulations had not made a finding of sham, they provide another basis for assessing interest under former Section 6621(c): distortion of income. The full language of the stipulated decisions reads, "the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v), *so as to result in a substantial distortion of income and expense,* as described in I.R.C. § 6621(c)(3)(A)(iv)." *E.g., Emperor Seedless–85,* No. 15039–91, slip op. at 2 (emphasis added). "The phrase 'so as to result in a substantial distortion of income and expense' simply tracks the language of the former [I.R.C.] § 6621(c)(3)(A)(iv), which likewise helps to define tax-motivated transactions. Thus, each phrase independently establishes that the adjustments were attributable to the partnerships' tax-motivated activities." *Duffie,* 600 F.3d at 373 (quoting *Nault,* 517 F.3d

at 5). Therefore, on this alternative ground the McCanns are bound by a determination that their transactions were tax motivated. That determination goes to "the nature of [the] partnership's transaction[s]," *Keener,* 551 F.3d at 1366, and cannot be disputed in the present partner-level suit, I.R.C. § 7422(h).

The Eppses challenge their assessment of former Section 6621(c) interest on different grounds. Unlike the McCanns, the Eppses did not enter into stipulated decisions. Instead, like the plaintiffs in *Keener* and the Prati set of plaintiffs in *Prati,* they settled their liability with the IRS through the use of Forms 870–P(AD). The Eppses nevertheless argue that their case is not governed by *Keener* or *Prati.* They contend that *Keener* is "limited to its facts because ... [its] penalty interest holdings are predicated on alleged concessions by those taxpayers. There are no such concessions here." Pls.' Opp'n at 10 (footnote and emphasis omitted). The Eppses' reference to concessions refers to commentary in *Keener,* as follows:

> Taxpayers also obliquely suggest that this case is tantamount to the potential situation where the IRS imposes penalty interest when *no* partnership-level determination has been made that the transactions were tax motivated. Quite simply, this is not that case. Each relevant FPAA disallowed the partnership's deductions because "[t]he partnership's activities constitute[d] a series of sham transactions." *Taxpayers concede that the FPAAs are conclusive,* as this finding was not altered by the Settlement Agreements. And the statute is clear that a "sham or fraudulent transaction" is a "tax motivated transaction." I.R.C. § 6621(c)(3)(A)(v) [ (repealed 1989) ].

551 F.3d at 1367 (alterations in original) (emphasis added). The Eppses reason that because they have not conceded that the FPAAs are conclusive, and because the Forms 870–P(AD) do not mention sham transactions, there has been no finding that they were involved in sham transactions.

■ The Eppses misread *Keener. Keener* did not rely on the taxpayers' concession to

determine that the FPAAs were conclusive. To the contrary, the *Keener* court noted the concession as only acknowledging the obvious: the FPAAs were conclusive because their findings "[were] not altered by the Settlement Agreements." *Keener*, 551 F.3d at 1367. This understanding of *Keener* is confirmed by *Schell* and *Prati*, neither of which mention taxpayer concessions as bearing on the conclusiveness of the FPAAs. *See Prati*, 603 F.3d at 1308; *Schell v. United States*, 589 F.3d 1378, 1383–84 (Fed.Cir.2009) (citing *Keener*, 551 F.3d at 1366); *see also Dahlberg*, 104 Fed.Cl. at 222–23. Because the FPAAs are conclusive regardless of taxpayer concessions *vel non*, the Eppses are bound by them. Those FPAAs disallowed deductions because, among other reasons, the underlying transactions were shams.[6] As with the stipulations binding the McCanns, the settlements incorporating the FPAAs and binding the Eppses did in fact make a determination of "the nature of [the] partnership's transaction[s]." *Keener*, 551 F.3d at 1366. The Eppses cannot dispute that determination in this partner-level suit. I.R.C. § 7422(h).

### C. *Synopsis*

*Keener* and *Prati* control the present case, and they require dismissal of plaintiffs' claims. Plaintiffs' statute of limitations claims must be dismissed because they are categorically attributable to partnership items. Plaintiffs' claims for refund of penalty interest imposed under former Section 6621(c) must also be dismissed because they too are attributable to partnership items, namely, the characterization of the underlying transactions as shams. The McCanns' penalty interest claims stem from the stipulated Tax Court decisions. Those decisions did in fact find that the McCanns' partnership transactions were shams and involved substantial distortions of income. Those findings serve as partnership-item bases for the assessment of penalty interest against the McCanns, which cannot be challenged in

this partner-level suit. The Eppses' penalty interest claims stem from their Form 870–P(AD) settlements. According to *Keener*, *Schell*, and *Prati*, these settlements incorporated their predicate FPAAs. The FPAAs issued against the Eppses did in fact find that the Eppses' partnership transactions were shams. This finding serves as a partnership-item basis for the assessment of penalty interest against the Eppses, which likewise cannot be challenged in this partner-level suit.

### CONCLUSION

For the reasons stated, the government's Motion to Dismiss is GRANTED. The Clerk of the Court is directed to enter final judgment, dismissing the McCanns' and Eppses' consolidated First Amended Complaint for lack of subject matter jurisdiction.

No costs.

It is so ORDERED.

---

6. Plaintiffs additionally argue that the Section 6621(c) penalty is invalid because the FPAAs disallowed the deductions for multiple reasons, but only some of those reasons were grounds for assessing Section 6621(c) interest. This argument is meritless. As the Federal Circuit has repeatedly emphasized, "that the FPAAs listed 'sham transaction' as one of several grounds for disallowing partnership does not, as the [t]axpayers suggest, render the FPAAs less conclusive." *Schell*, 589 F.3d at 1384 (citing *Keener*, 551 F.3d at 1366).